STATE TREASURER v GARDNER

Docket No. 167791. Submitted March 5, 1996, at Lansing. Decided February 25, 1997, at 9:35 A.M. Leave to appeal sought.

The State Treasurer brought an action in the Saginaw Circuit Court against James A. Gardner, Sr., a state prison inmate, seeking reimbursement pursuant to the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.*; MSA 28.1701 *et seq.*, of the costs of the defendant's care while incarcerated. Following a show cause hearing, the court, Patrick M. Meter, J., awarded to the plaintiff ninety percent of the defendant's accrued and future benefits from a disability pension. The defendant appealed.

The Court of Appeals *held*:

1. The defendant was not denied his rights to due process when the trial court did not issue a writ of habeas corpus on its own initiative to secure the defendant's attendance at the show cause hearing. Due process requires notice and an opportunity to be heard. The defendant had sufficient notice of the hearing, but chose not to apply for a writ of habeas corpus that would have allowed him to be present for oral argument at the hearing.

2. MCL 600.6023(1)(f); MSA 27A.6023(1)(f), which excludes a judgment debtor's disability benefits from levy and sale by a judgment creditor, is more general than, and therefore must yield to, the more specific SCFRA, which in § 1a(a), MCL 800.401a(a); MSA 28.1701(1)(a), defines "assets" subject to use as reimbursement to include pension benefits.

3. 15 USC 1673(b)(2)(B), which is part of the garnishment restrictions subchapter of the Consumer Credit Protection Act, 15 USC 1671 *et seq.*, limits garnishment to sixty percent of the defendant's disability benefits. The plaintiff's action pursuant to the SCFRA is a legal procedure through which the earnings of an individual are required to be withheld for payment of a debt, 15 USC 1672(c). Earnings are compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program, 15 USC 1672(a). The order entered by the trial court is an order for the support of a person (the defendant), garnishment for which is limited by 15 USC 1673(b)(2)(B) to sixty per-

cent of earnings where, as here, the individual is not supporting a spouse or a dependent child. The appropriation of the defendant's disability pension at the maximum rate allowed by the SCFRA of ninety percent was in error. Under US Const, Art VI, cl 2, the Supremacy Clause, federal statutes override conflicting state law.

Affirmed in part, reversed in part, and remanded for modification of order.

M. R. KNOBLOCK, J., concurring in part and dissenting in part, stated that the garnishment restrictions of the Consumer Credit Protection Act do not apply to this case inasmuch as those restrictions were intended to regulate garnishment of periodic payment of compensation needed to support a wage earner and his family on a week-to-week, month-to-month basis and the defendant's disability benefits are not such compensation. The trial court's judgment should be affirmed in its entirety.

1. PRISONS AND PRISONERS — STATE CORRECTIONAL FACILITY REIMBURSEMENT ACT — DISABILITY PENSIONS.

The statute that exempts a judgment debtor's disability pension benefits from levy and sale by a judgment creditor does not apply against the state where the state, pursuant to the State Correctional Facility Reimbursement Act, seeks a state prison inmate's disability pension benefits as reimbursement for the cost of the inmate's care while incarcerated (MCL 600.6023[1][f], 800.401a[a], 800.404; MSA 27A.6023[1][f], 28.1701[1][a], 28.1704).

2. PRISONS AND PRISONERS — STATE CORRECTIONAL FACILITY REIMBURSEMENT ACT — DISABILITY PENSIONS — CONSUMER CREDIT PROTECTION ACT.

Reimbursement of the state pursuant to the State Correctional Facility Reimbursement Act from a state prison inmate's disability pension benefits is limited by the garnishment restrictions of the Consumer Credit Protection Act to no more than sixty percent of such benefits where the inmate is not supporting a spouse or a dependent child (MCL 800.404; MSA 28.1704; 15 USC 1673[b][2][B]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *E. David Brockman* and *Daniel M. Levy*, Assistant Attorneys General, for the plaintiff.

Prison Legal Services of Michigan, Inc. (by *Sandra Girard*), for the defendant.

Before: MARILYN KELLY, P.J., and WAHLS and M. R. Knoblock*, JJ.

MARILYN KELLY, P.J. Defendant appeals by leave granted from an award to plaintiff of ninety percent of all accrued and future benefits he receives from his disability pension. He argues that he was denied due process when the trial court allowed plaintiff's counsel to appear and argue at the court hearing, but denied him the same opportunity. He asserts that MCL 600.6023(1)(f); MSA 27A.6023(1)(f) prohibits execution on his disability pension. Finally, he argues that garnishment of his disability pension is limited by federal law. We affirm in part, but modify the percentage of defendant's pension that can be appropriated.

Defendant has been a prisoner in the custody of the Department of Corrections since January 23, 1990. Plaintiff brought suit under the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.;* MSA 28.1701 *et seq.,* for reimbursement of the cost of defendant's care while incarcerated. David Viele, Assistant Deputy Director of the Bureau of Administrative Services of the Michigan Department of Corrections, estimated the cost of defendant's care until his earliest possible release date to be $124,750. Plaintiff sought to obtain ninety percent of the proceeds from defendant's long term disability pension to pay for defendant's care.

On December 16, 1991, the trial court ordered defendant to show cause why his disability pension assets should not be appropriated to reimburse the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

state for the cost of his confinement. Defendant did not appear at the hearing, but submitted pleadings for the trial court's review. Plaintiff's counsel appeared and argued the state's position. The trial court ordered ninety percent of all accrued and future benefits received from the disability pension to be turned over to plaintiff.

I

First, defendant argues that the trial court denied him his due process rights by not sua sponte issuing a writ of habeas corpus to secure his attendance at the show cause hearing. He asserts that a refusal to allow a prisoner to appear and argue while giving the same right to the opposing party is a denial of due process, citing *Lawrence v Dep't of Corrections*, 81 Mich App 234; 265 NW2d 104 (1978).

We agree with defendant that the SCFRA provides for a hearing on the state's complaint. MCL 800.404; MSA 28.1704. However, the circumstances in *Lawrence* are distinguishable from those in the instant case. In *Lawrence*, the plaintiff, an inmate at Jackson Prison, alleged that when he was placed in a detention cell his personal property was lost, stolen or destroyed. *Lawrence, supra* at 236. He sued alleging that prison officials breached their duty to him to exercise reasonable care. *Id.*

The Attorney General moved for summary disposition, and a copy of the motion was mailed to the plaintiff five days before the hearing. *Id.* at 237. The court denied plaintiff's application for a writ of habeas corpus, which would have allowed him to be present for oral argument. *Id.*

This Court ruled that the plaintiff was denied due process, because he was not served with the motion in time to afford him a reasonable opportunity to prepare and answer. *Id.* at 238. The Court also held that it was an abuse of discretion for the trial court to allow the Attorney General to present oral argument and deny the plaintiff the same opportunity. *Id.* at 239.

Here, defendant had sufficient notice of the show cause hearing. In fact, he submitted pleadings for the trial court's review. Furthermore, unlike the plaintiff in *Lawrence*, defendant did not apply for a writ of habeas corpus that would have allowed him to be present for oral argument. Due process does not require that the trial court sua sponte issue a writ of habeas corpus to secure a party's presence. It requires notice and an opportunity to be heard. *Mudge v Macomb Co*, 210 Mich App 436, 441; 534 NW2d 539 (1995). Defendant had both in this case. His due process rights were not violated.

II

Next, defendant argues that MCL 600.6023; MSA 27A.6023, which exempts property from levy and sale, precludes execution on his disability pension. We disagree.

The SCFRA was enacted to establish procedures for reimbursement to the state for expenses incurred in the housing of prisoners. *State Treasurer v Cuellar*, 190 Mich App 464, 467; 476 NW2d 644 (1991). It provides that not more than ninety percent of a prisoner's "assets" may be recovered in an action by the state for prison reimbursement. MCL 800.403; MSA 28.1703. The SCFRA defines assets as "property, tan-

gible or intangible, real or personal, belonging to or due a prisoner . . . including . . . pension benefits . . . ." MCL 800.401a(a); MSA 28.1701(1)(a).

By contrast, MCL 600.6023; MSA 27A.6023 governs the relationship between judgment creditors and debtors. It provides:

> (1) The following property for the debtor and the debtor's dependents shall be exempt from levy and sale under any execution:
>
> *     *     *
>
> (f) Any money or other benefits paid, provided, or allowed to be paid, provided, or allowed, by any stock or mutual life or health or casualty insurance company, on account of the disability due to injury or sickness of any insured person, whether the debt or liability of such insured person or beneficiary was incurred before or after the accrual of benefits under the insurance policy or contract, except that the exemption does not apply to actions to recover for necessities contracted for after the accrual of the benefits.

Defendant argues that MCL 600.6023; MSA 27A.6023 is controlling, because it was amended more recently than the enactment of the SCFRA. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *State Treasurer v Schuster*, 215 Mich App 347, 351; 547 NW2d 332 (1996); *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The Legislature is presumed to be familiar with rules of statutory construction. When promulgating new laws, it is charged with knowledge of existing laws on the same subject and presumed to have considered their effect on any new legislation. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993).

However, where two statutes conflict, and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails. *Gebhardt v O'Rourke*, 444 Mich 535, 542-543; 510 NW2d 900 (1994). This is true even where the specific statute was enacted before the general one. *Bauer v Dep't of Treasury*, 203 Mich App 97, 100; 512 NW2d 42 (1993).

In *Schuster*, this Court held that the plaintiff could not seek reimbursement from the defendant's retirement allowance. The Court reasoned that the Public School Employees Retirement Act (PSERA), MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.*, was controlling, because it was more specific than the SCFRA. The PSERA deals specifically with a public school employee's retirement allowance and protects it from legal process. *Schuster, supra* at 353. In the context of the case, the SCFRA was held to be more general in scope. The reasoning was that it deals with the ability of the state to seek reimbursement for costs from a prisoner's property in general. *Id.* at 352.

The instant case, however, is markedly different from *Schuster*. MCL 600.6023; MSA 27A.6023 does not address merely disability pension benefits. Rather, it governs the general relationship between judgment creditors and debtors. The SCFRA deals with the precise issue before us today: state reimbursement claims against prisoners. Therefore, we find it controlling. *Bauer, supra.* Because the SCFRA is more specific, MCL 600.6023; MSA 27A.6023 does not preclude plaintiff from seeking reimbursement from defendant's disability pension.

III

Defendant's last argument is that garnishment of his disability pension is limited by the Garnishment Restrictions subchapter of the Consumer Credit Protection Act. 15 USC 1671 *et seq.* The intent of that subchapter is to grant an exemption for wage earners from burdensome garnishments, to protect employment of wage earners and to prevent bankruptcies. *Gerry Elson Agency, Inc v Muck*, 509 SW2d 750 (Mo App, 1974). 15 USC 1673 provides, in pertinent part:

(a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week . . . .

\*     \*     \*

(b)(1) The restrictions of subsection (a) of this section do not apply in the case of

(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.

\*     \*     \*

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week.

We must first determine whether the court's order to assign ninety percent of defendant's disability pension to plaintiff constitutes a garnishment within the meaning of 15 USC 1673. Garnishment is defined as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 USC 1672(c). Earnings are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 USC 1672(a).

Plaintiff argues that defendant's disability pension payments were not "earnings," because they do not constitute remuneration for past personal services, but compensation for defendant's disabling medical condition. "Earnings" are limited to periodic payments of compensation and do not pertain to every asset that is traceable in some way to such compensation. *Kokoszka v Belford*, 417 US 642; 94 S Ct 2431; 41 L Ed 2d 374 (1974). In defining "earnings," "Congress . . . sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Id.* at 651.

We find in this case that defendant's monthly disability pension payments were earnings as defined in 15 USC 1672(a). The Consumer Credit Protection Act specifically includes pensions within its definition of earnings. Plaintiff's argument that this pension should

be treated differently, because it is a disability pension as opposed to a standard retirement pension, is unpersuasive. Defendant's disability pension payments are a result of the combination of his performance of personal services and his health problems. The payments would not have been received, but for his past employment. Because defendant's disability pension payments are earnings, we hold that plaintiff's action comes within the definition of garnishment and is subject to the limitations imposed by the Consumer Credit Protection Act.

We also find that an exclusion contained in 15 USC 1673(b)(1) applies. The garnishment of defendant's disability pension was an order for his support excluded from the restrictions of 15 USC 1673(a). If the plain and ordinary meaning of statutory language is clear, judicial construction is normally neither necessary nor permitted. *Nellis v Nellis*, 211 Mich App 226, 229-230; 535 NW2d 240 (1995). In order for the exception to apply, the support order must (1) be issued by a court of competent jurisdiction, (2) there must be substantial due process, and (3) the order must be subject to judicial review. *Agg v Flanagan*, 855 F2d 336, 340 (CA 6, 1988).

Here, the order was issued by a court of competent jurisdiction, and it was a support order. The primary purpose of 15 USC 1673(b)(1)(A) is to exclude familial support orders from 15 USC 1673(a). However, its language clearly states that the exception applies where the order is for the support of "any" person. Any person would include defendant under the unique circumstances of this case. Because all the requirements for the exception have been met, the

garnishment order in this case is excluded from the limitation on garnishment of 15 USC 1673(a).

Finally, we must determine how much of defendant's disability pension may be garnished. There is no indication from the record that defendant is supporting a spouse or dependent child. Accordingly, 15 USC 1673(b)(2)(B) limits garnishment to sixty percent of defendant's assets. Under the Supremacy Clause of the United States Constitution, US Const, Art VI, cl 2, federal statutes override conflicting state law. See *Bennett v Arkansas*, 485 US 395; 108 S Ct 1204; 99 L Ed 2d 455 (1988). Therefore, the lower court erred in awarding plaintiff ninety percent of defendant's disability pension.

We remand this case for modification of the order. Plaintiff is entitled to sixty percent of defendant's accrued and future disability pension benefits as reimbursement for defendant's support while incarcerated.

Affirmed in part and remanded. We do not retain jurisdiction.

WAHLS, J., concurred.

M. R. KNOBLOCK, J. (*concurring in part and dissenting in part*). Although I agree, and therefore concur with the majority in the analysis and holdings in parts I and II of its opinion, I must dissent with regard to part III.

As noted by the majority, the intent of the Garnishment Restrictions subchapter of the Consumer Credit Protection Act, 15 USC 1671 *et seq.*, is to grant an exemption for wage earners from burdensome garnishments, to protect employment of wage earners, and to prevent bankruptcies. I submit that the major-

ity's application of this subchapter is not in accord with this intent. "There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Kokoszka v Belford*, 417 US 642, 651; 94 S Ct 2431; 41 L Ed 2d 374 (1974). The periodic payments sought to be levied upon by plaintiff in this case clearly are not "compensation needed to support the wage earner and his family." I would therefore hold that the Garnishment Restrictions subchapter is inapplicable in this case and would affirm the judgment of the trial court in its entirety.