# STATE OF MICHIGAN

# COURT OF APPEALS

STATE TREASURER,

       Plaintiff-Appellee,

UNPUBLISHED
January 12, 2016

v

DAVID M. DUTY,

       Defendant-Appellant,

and

ANDREA MCDOWELL,

       Defendant.

No. 323854
Gratiot Circuit Court
LC No. 14-011882-CZ

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

This appeal involves defendant-appellant's (hereinafter "defendant") challenge to the trial court's order requiring him to reimburse the state for some of the costs associated with his incarceration pursuant to the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.* We affirm.

## I. FACTS

Defendant is a state prisoner who is also a member of the Grand Traverse Band of Ottawa and Chippewa Indians (the tribe). In 2001, defendant was sentenced by the Grand Traverse Circuit Court, following his conviction for third-degree criminal sexual conduct. In 2004, defendant was sentenced by the Gratiot Circuit Court, following his conviction for being a prisoner in possession of a weapon. Defendant is entitled to receive biannual per capita payments from the tribe, derived from revenue the tribe generates from gaming activity on its lands. In 2007, plaintiff filed suit in the Gratiot Circuit Court against defendant and Stacy Lewis, who was apparently holding some of defendant's payments, seeking reimbursement for defendant's incarceration expenses under the SCFRA. In 2008, the court issued a final order in favor of plaintiff, but plaintiff never received any payments.

In 2014, plaintiff filed a second suit in the Gratiot Circuit Court, this time against defendant and Andrea McDowell, defendant's mother, asserting that McDowell was receiving

the per capita payments on behalf of defendant. The trial court entered an order to show cause why defendant's assets should not be used to reimburse the state pursuant to the SCFRA. The trial court also required that defendant and McDowell provide an accounting of defendant's assets, and that McDowell place a hold over any funds she received on defendant's behalf. Defendant's prison account was frozen.

Defendant, *in propria persona*, filed a written response to the order to show cause. He objected to the state's claim and argued that the court did not have jurisdiction to adjudicate a claim involving the allotment of money from Indians or Indian tribes. Defendant further argued that Michigan lacked jurisdiction over Indian property and Indians because it was not one of six states to which the federal government granted such jurisdictional power in 28 USC 1360(a). Defendant also asserted that the payments from the tribe would not equal or exceed 10% of the estimated cost of his incarceration as required by MCL 800.403(2).

After a hearing, the trial court issued an opinion and order resolving the case in favor of plaintiff. The court found that the tribal distribution was subject to the SCFRA and that federal restrictions on attachment, seizure, and levy did not apply to distributions to an inmate in a state prison. The trial court also found that it had jurisdiction over the claim under MCL 800.404 because the Gratiot Circuit Court had previously sentenced defendant, and he was still under the jurisdiction of the Department of Corrections. The court further reasoned that in *State Treasurer v Cuellar*, 190 Mich App 464, 467; 476 NW2d 644 (1991), this Court expressly recognized that the SCFRA does not bar the state from seeking reimbursement even if the recovery would be less than 10% of the cost of the inmate's care. Finally, the court concluded that the previous order in the first case did not estop plaintiff from bringing the current case.

## II. JURISDICTION

On appeal, defendant challenges the trial court's jurisdiction over this matter on two grounds. First, defendant contends that the State of Michigan lacks jurisdiction over him and the per capita payments because he is the member of an Indian tribe and the tribe disburses the payments. Second, defendant contends that the Gratiot Circuit Court lacks jurisdiction pursuant to MCL 800.404(1) because it is not the circuit court that sentenced defendant to the sentence he is actively serving. "The appellate standard of review when examining jurisdictional rulings is de novo." *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995).

### A. PER CAPITA DISBURSEMENTS

"Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe inhabiting it, and not with the States." *Alaska v Native Village of Venetie Tribal Gov't*, 522 US 520, 527 n 1; 118 S Ct 948; 140 L Ed 2d 30 (1998). However, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v Jones*, 411 US 145, 148-149; 93 S Ct 1267; 36 L Ed 2d 114 (1973).

-2-

In this case, it is undisputed that defendant is not living on an Indian reservation. Also, the cause of action in this case, i.e., partial reimbursement for the cost of defendant's incarceration expenses, involves circumstances beyond an Indian reservation and is based on a non-discriminatory state law otherwise applicable to all Michigan citizens. Defendant has not cited any federal law exempting him personally from jurisdiction in Michigan. Defendant also does not personally enjoy sovereign immunity from suit because tribal sovereign immunity does not extend to the individual members of a tribe. *Mich United Conservations Clubs v Anthony*, 90 Mich App 99, 109; 280 NW2d 883 (1979), citing *Puyallup Tribe, Inc v Dep't of Game of Washington*, 433 US 165; 97 S Ct 2616; 53 L Ed 2d 667 (1977). Therefore, defendant's argument that he is personally immune from the jurisdiction of Michigan courts is unavailing.

Defendant's argument that the disbursements paid to him by the tribe cannot be reached is also not persuasive. Defendant argues that the Indian Gaming Regulatory Act (IGRA), 25 USC 2710(b)(2), only allows a tribe to disburse per capita payments for purposes authorized by the IGRA, and using the payment to reimburse the state for incarceration costs is not one of the approved purposes. This argument fails to recognize the distinction between the tribe and defendant as an individual. The state is seeking reimbursement from defendant, not from the tribe. The fact that the tribe makes payments to defendant for his general welfare is immaterial to this issue and irrelevant to Michigan's jurisdiction in this case.

Defendant makes an analogous argument that the tribe's law and the tribe's compact with the state only allow the tribe to expend gaming income for authorized purposes under the IGRA. Defendant points out that the tribe's law states that revenue from tribal gaming operations "shall be held in the name of the Tribe" and may only be expended by the tribal council by resolution for purposes specified by the IGRA. See 18 Grand Traverse Band Code § 1002(a)(2). Defendant further asserts that the tribe did not explicitly or implicitly allow Michigan to take jurisdiction over any action that could result in alienation of the per capita payments made to tribe members. These arguments again fail to acknowledge the important distinction between the tribe and defendant as an individual. As plaintiff argues, once the tribe disburses money to defendant, it is no longer tribal property and is not protected by the tribe's sovereign immunity. Defendant has not pointed to any express federal law that exempts tribal disbursements from the jurisdiction of the state.[1]

---

[1] Defendant also points out that the tribe's law states the following:

> [N]othing in this code nor any action of the Tribal Commission shall be deemed or construed to be a waiver of sovereign immunity from suit of the Tribe, or to be a consent of the Tribe to the jurisdiction of the United States or of any state or of any other tribe with regard to the business or affairs of the Tribal Commission or the Tribe, or to be a consent of the Tribe to any cause of action, case or controversy, or to the levy of any judgment, lien or attachment upon any property of the Tribe; or to be a consent to suit in respect to any Indian land, or to be a consent to the alienation, attachment or encumbrance of any such land. [18 Grand Traverse Band Code § 407(b).]

Defendant argues that absent compliance with 25 USC 1322, state courts cannot exercise jurisdiction over reservation Indians. However, 25 USC 1322 only applies if a state takes jurisdiction with the tribe's consent over actions that arise in Indian country.[2] The parties do not dispute that defendant is not living on an Indian reservation, and the events relating to the suit did not arise on an Indian reservation.

Defendant's reliance on 28 USC 1360 is similarly misplaced. This statute grants the following states jurisdiction over actions arising in Indian country within the state boundaries: Alaska, California, Minnesota, Nebraska, Oregon, and Wisconsin. 28 USC 1360(a). Defendant argues that Michigan cannot exercise jurisdiction in this case because it is not one of the listed states; however, this argument is unavailing because Michigan is not attempting to assert jurisdiction over an action arising in Indian country.

In sum, the State of Michigan has jurisdiction over defendant and the disbursements made to him because the cause of action in this case arose outside of an Indian reservation and federal law does not protect the tribal per capita payments once distributed to defendant.

### B. JURISDICTION UNDER MCL 800.404(1)

Defendant next argues that the Gratiot Circuit Court lacked jurisdiction over the proceedings under the SCFRA under MCL 800.404(1). The SCFRA provides in relevant part, "[T]he circuit court shall have exclusive jurisdiction over all proceedings under this act. The attorney general may file a complaint in *the* circuit court for *the* county from which a prisoner was sentenced . . . ." MCL 800.404(1) (emphasis added). Defendant contends that the Legislature's use of the definite article "the" in MCL 800.404(1) means that the Legislature intended only the particular circuit court that imposed a prisoner's "controlling sentence" to have jurisdiction. Defendant does not define what he means by "controlling sentence," but his argument implies that "controlling sentence" means "active sentence."

---

Defendant asserts that the tribe's constitution allows the Tribal Council to "prevent the sale, disposition, lease or encumbrance of Grand Traverse Band land, interests in land, or other assets of the Grand Traverse Band." Constitution of the Grand Traverse Band, art IV, § 1(e). As with his other arguments, defendant's reliance on § 407(b) and the tribe's constitution fails to distinguish between the tribe's property and defendant's property. Once the tribe disburses funds to defendant, those funds are no longer protected by the tribe's sovereign immunity.

[2] 18 USC 1151 defines "Indian country" as:

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

We need not wade into the question of statutory construction regarding MCL 800.404(1) because, contrary to defendant's contention, his sentence from the Gratiot Circuit Court is currently active. Defendant has two active sentences. The first was issued in 2001 by the Grand Traverse Circuit Court for 3 to 15 years. The Gratiot Circuit Court imposed the second sentence in 2004 for two to five years. The effect of the second conviction is that defendant's time in prison was extended from 3 to 15 years to 5 to 20 years. Thus, the sentence from the Gratiot Circuit Court is still active, meaning that the court had jurisdiction. Accordingly, the Gratiot Circuit Court had jurisdiction over defendant pursuant to MCL 800.404(1) because it sentenced defendant and he was still actively serving that sentence at the time plaintiff filed suit.

## III. RES JUDICATA AND COLLATERAL ESTOPPEL

Finally, defendant asserts that plaintiff's present action is barred by the doctrines of res judicata and collateral estoppel because plaintiff obtained a final order in the 2007 lawsuit. The application of legal doctrines, such as collateral estoppel and res judicata, is a question of law that we review de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Res judicata bars a subsequent action if "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Estes*, 481 Mich at 585 (quotation marks and citation omitted). Res judicata also bars all claims "arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). The doctrine of collateral estoppel will only apply if "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes*, 481 Mich at 585. "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat v State Farm Ins Co*, 469 Mich 679, 684; 677 NW2d 843 (2004) (quotation marks and citation omitted). The "same parties" means the same adversarial parties. *Eyde v Meridian Charter Twp*, 118 Mich App 43, 52; 324 NW2d 775 (1982).

Defendant mistakenly argues that res judicata and collateral estoppel bar plaintiff's claim because Lewis and McDowell are not adversarial parties in relation to himself. However, the proper analysis focuses on the relationship between plaintiff and Lewis and McDowell, as the adversarial parties in the two suits. In the present case, McDowell is a new adversarial party, and Lewis is not a party. Accordingly, neither res judicata nor collateral estoppel applies because the same parties were not involved in the first and second suit.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien