# STATE OF MICHIGAN

# COURT OF APPEALS

---

DEBORAH LYNN FOSTER,

      Plaintiff/Counter-Defendant-
      Appellee,

v

RAY JAMES FOSTER,

      Defendant/Counter-Plaintiff-
      Appellant.

UNPUBLISHED
March 22, 2018

No. 324853
Dickinson Circuit Court
LC No. 07-015064-DM

---

ON REMAND

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appealed an order holding him in contempt of court for failing to comply with the parties' 2008 consent divorce judgment. We previously affirmed that ruling. *Foster v Foster*, unpublished opinion per curiam of the Court of Appeals, issued October 13, 2016 (Docket No. 324853). The case is once again before us after our Supreme Court entered the following order with respect to defendant's application for leave to appeal:

> Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we vacate the judgment of the Court of Appeals and we remand this case to the Court of Appeals for reconsideration in light of *Howell v Howell*, __ US __; 137 S Ct 400; 197 L Ed 2d 781 (2017). [501 Mich 917.]

On reconsideration, we again affirm the trial court's ruling.

Given that the Supreme Court vacated the earlier opinion in its entirety, and in order to provide context for our discussion and analysis of *Howell*, we shall first set forth most of the previous opinion:

> Defendant appeals as of right an order holding him in contempt of court for failure to pay plaintiff in compliance with the parties' consent divorce judgment that was entered in December 2008. Defendant argues that the contempt order and the divorce judgment itself are unenforceable because their

-1-

effect is to require defendant to pay plaintiff a portion of his military disability benefits as part of the property settlement in violation of federal law. Defendant also presents arguments regarding alleged problematic factual findings and other legal shortcomings tied to entry of the divorce judgment. Defendant's arguments are effectively and ultimately rooted in the judgment of divorce and its terms; however, he never appealed that judgment, nor has he moved for relief from that judgment, MCR 2.612. Thus, defendant is engaging in an improper collateral attack on the divorce judgment. See *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999) (the defendant's failure to appeal the original divorce judgment precluded collateral attack on the merits of the judgment and effectively constituted a stipulation to its provisions). Indeed, defendant agreed to the very provision in the divorce judgment that he now assails. Nevertheless, for the reasons set forth below, we also substantively reject defendant's arguments. . . . .

The parties were married on August 6, 1988, and plaintiff filed for divorce on November 20, 2007. Defendant had served in the military during, and prior to, the marriage, and he retired from the Army in September 2007. Defendant testified at the divorce hearing, which involved finalizing the parties' settlement, that he was receiving both military retirement pay and military disability benefits based on injuries he had sustained during the war in Iraq. Both parties waived their rights to seek spousal support and agreed that defendant's disability benefits were not subject to division by the court because they were not considered marital property under federal law. However, pursuant to the property settlement, plaintiff was awarded 50 percent of defendant's retirement pay, or "disposable military retired pay," as calculated based on defendant's creditable military service during the marriage. The parties also agreed to the inclusion of the following provision in the divorce judgment, which we shall refer to as the "offset provision:"

"If Defendant should ever become disabled, either partially or in whole, then Plaintiff's share of Defendant's entitlement shall be calculated as if Defendant had not become disabled. Defendant shall be responsible to pay, directly to Plaintiff, the sum to which she would be entitled if Defendant had not become disabled. Defendant shall pay this sum to Plaintiff out of his own pocket and earnings, whether he is paying that sum from his disability pay or otherwise, even if the military refuses to pay those sums directly to Plaintiff. If the military merely reduces, but does not entirely stop, direct payment to Plaintiff, Defendant shall be responsible to pay directly to Plaintiff any decrease in pay that Plaintiff should have been awarded had Defendant not become disabled, together with any Cost of Living increases that Plaintiff would have received had Defendant not become disabled. Failure of Defendant to pay these amounts is punishable through all contempt powers of the Court."

At the divorce hearing, the trial court questioned the attorneys regarding the language of the offset provision, noting that it seemed to suggest that defendant was not currently receiving any disability benefits, which was not the case. Counsel for both parties acknowledged that the language was awkward, but

explained that the intent was simply to address a scenario in which defendant became entitled to and accepted more disability benefits than currently being received, inversely diminishing the retirement benefits that were being divided and awarded to plaintiff. The purpose of the offset provision was to protect plaintiff in such a scenario. The trial court also discussed the offset provision with defendant in the following exchange:

> *Court.* "All right, . . . Mr. Foster, you do acknowledge that if you were to defer any of your current military retirement pay or convert it to disability pay, or if your military retirement pay were reduced because the level of your disability pay was increased, you acknowledge this Court's ability to enforce payment to Ms. Foster the level of benefits that she would be entitled [to] presently from your retirement pay?

> *Defendant.* Yes."

Shortly after the entry of the divorce judgment, defendant became eligible for and began receiving increased disability benefits, which consequently reduced the amount of his retirement payments and the amount plaintiff received from defendant's military retirement pay. This was the precise circumstance that the parties had contemplated in drafting and agreeing to the offset provision. However, defendant failed to comply with the divorce judgment by paying plaintiff the difference between the reduced amount of retirement pay she received and the amount that she had received at the time of the divorce judgment. A number of show cause and contempt proceedings took place over several years, leading to the order that defendant now appeals, wherein the trial court held defendant in contempt for failure to pay plaintiff in compliance with the consent divorce judgment. The court ordered him to pay plaintiff $1,000 per month, with $812 credited as current payments due under the divorce judgment and $188 to be credited against the arrearage of $34,398 until the arrearage was paid in full.

Defendant's primary argument on appeal is that the divorce judgment and the trial court's order enforcing the judgment were legally invalid because they required him to pay plaintiff a portion of his disability benefits in violation of federal law. We disagree. Defendant's argument entails statutory construction and questions of law in general, which we review de novo on appeal. *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011).

"Members of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay." *Mansell v Mansell*, 490 US 581, 583; 109 S Ct 2023; 104 L Ed 2d 675 (1989) (citations omitted). And retired or retirement pay is generally subject to division in state court divorce proceedings under the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 USC 1408. *Id.* at 584-585; *Megee v Carmine*, 290 Mich App 551, 562; 802 NW2d 669 (2010). With respect to disability pay, "[m]ilitary veterans in general are entitled to compensation for service-connected disabilities under 38

USC 1101 *et seq*.," sometimes referred to as "VA disability benefits." *Megee*, 290 Mich App at 560. Pursuant to 10 USC 1414(a)(1), as effective January 1, 2004, " 'a member or former member of the uniformed services who is entitled for any month to retired pay and who is also entitled for that month to veterans' disability compensation for a qualifying service-connected disability . . . is entitled to be paid both for that month . . . .' " *Id.* at 560-561 (ellipses in *Megee*). "This concurrent receipt of military retirement pay and VA disability benefits is commonly referred to as CRDP, which stands for 'concurrent retirement and disability pay.' " *Id.* at 561 (citation omitted). Another form of military disability pay, separate from standard VA disability benefits, is combat-related special compensation (CRSC), 10 USC 1413a. *Id.* at 552-553. "To be eligible for CRSC, a person must be a member of the uniformed services who is entitled to retired pay and who has a *combat-related* disability." *Id.* at 560, citing 10 USC 1413a(c) (emphasis added). A veteran who is qualified for CRDP (retirement pay plus VA disability pay) and who is also qualified for CRSC (combat-related disability pay), may elect to receive CRDP or CRSC, but not both. *Megee*, 290 Mich App at 561.

According to defendant, he became entitled to receive CRSC, which determination was apparently made retroactive to a date preceding entry of the divorce judgment. Defendant elected to receive CRSC, which resulted in a diminution of his retirement pay and plaintiff's 50 percent award of that pay. See *Megee*, 290 Mich App at 561 ("Plaintiff elected CRSC, which effectively discontinued his retirement pay that had been subject to the QDRO, halting payments to defendant."). The *Megee* panel observed the following concerning CRSC and the division of waived retirement pay related to CRSC, i.e., retirement pay that is not being received because of a CRSC election:

"The trial court here effectively divided plaintiff's CRSC and, although *Mansell* did not directly address division of disability pay, the USFSPA clearly does not allow such a division. Subsection (c)(1) of the USFSPA, 10 USC 1408(c)(1), permits a court to treat only "disposable retired pay" as "property of the member and his spouse," and CRSC is "not retired pay," 10 USC 1413a(g). Accordingly, the trial court erred by dividing plaintiff's CRSC and forcing plaintiff to pay a portion of his CRSC to defendant. However, on the subject addressed in *Mansell*, i.e., dividing waived retirement pay, the *Mansell* decision actually supports making plaintiff in the case at bar pay defendant half of the retirement pay that he would be receiving but for his election to take CRSC. The *Mansell* Court concluded that waived retirement pay could not be divided as property in circumstances in which the pay had been waived in favor of title 38 VA disability benefits, given that the definition of "disposable retired pay" in 10 USC 1408(a)(4)(B) excludes consideration of amounts waived in order to receive title 5 or title 38 compensation. Under the reasoning and rationale of *Mansell*, there would be no prohibition here against considering for division waived retirement pay under the USFSPA because we are addressing a waiver of title 10 CRSC not mentioned in 10 USC 1408(a)(4)(B). Thus, all of plaintiff's envisioned

yet waived military-retirement pay can be divided without offending the USFSPA or *Mansell*. Accordingly, there is no bar to ordering plaintiff to compensate defendant in an amount equal to 50 percent of plaintiff's envisioned retirement pay as intended under the terms of the divorce judgment after plaintiff made a unilateral and voluntary postjudgment election to waive his retirement pay in favor of disability benefits contrary to the terms of the judgment.

\* \* \*

We hold that a military spouse remains financially responsible to compensate his or her former spouse in an amount equal to the share of retirement pay ordered to be distributed to the former spouse as part of a divorce judgment's property division when the military spouse makes a unilateral and voluntary postjudgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment. Conceptually, and consistently with extensive caselaw from other jurisdictions, we are dividing waived retirement pay in order to honor the terms and intent of the divorce judgment. Importantly, we are not ruling that a state court has the authority to divide a military spouse's CRSC, nor that the military spouse can be ordered by a court to pay the former spouse using CRSC funds. Rather, the compensation to be paid the former spouse as his or her share of the property division in lieu of the waived retirement pay can come from any source the military spouse chooses, but it must be paid to avoid contempt of court. To be clear, nothing in this opinion should be construed as precluding a military spouse from using CRSC funds to satisfy the spouse's obligation if desired. [*Megee*, 290 Mich App at 566-567, 574-575 (footnote omitted).]"

*Megee* governs and dictates, given the involvement of CRSC, that the offset provision in the consent divorce judgment is fully enforceable through the trial court's contempt powers. Defendant attempts to distinguish *Megee* on the basis that, because of the retroactive nature of the CRSC award, he effectively became entitled to and elected CRSC and waived retirement pay *prior* to entry of the divorce judgment, whereas *Megee* concerned a unilateral, *postjudgment* election to waive retirement pay and opt for CRSC. Defendant's argument construes *Megee* much too narrowly and misses the broader legal principle that emanates from *Megee*, which is that a state divorce court has the authority to divide waived retirement pay, which waiver had resulted from a veteran's decision to elect CRSC, so long as the court does not directly order payment from CRSC funds.[1] Thus, assuming for the sake of argument that defendant's waiver of retirement pay and election of CRSC must be treated as having already

---

[1] The contempt order does not require payment from CRSC funds, nor do we construe the divorce judgment's offset provision as ordering payment from CRSC funds, and any such construction must be avoided.

occurred when the divorce judgment was entered, the offset provision contemplating the division of waived retirement benefits was nonetheless valid and enforceable under *Megee*.

Defendant presents an alternative argument under 38 USC 5301, which regards the nonassignability and exempt status of veterans' benefits. Defendant's argument is woefully undeveloped and we deem it waived. See *Mudge v Macomb Co*, 458 Mich 87, 104-105; 580 NW2d 845 (1998). Moreover, as ruled earlier, the argument reflects an improper collateral attack on the judgment of divorce. See *Kosch*, 233 Mich App at 353. Finally, 38 USC 5301(a)(1) speaks of precluding the assignment of benefits "except to the extent specifically authorized by law[.]" As noted above, the USFSPA generally permits the division of disposable retired pay in state divorce actions, and the instant dispute concerns the division of waived retirement pay, which the *Megee* panel held was proper under federal law when the waiver is in relation to a CRSC election. *Megee*, 290 Mich App at 566-567, 574-575.

Finally, defendant poses arguments regarding alleged mistakes of fact by the trial court, along with purported fraud and unconscionable advantage, all tied to the procurement of the divorce judgment. These arguments are an improper and untimely attempt to relitigate the divorce action that was settled years ago absent appeal, and the arguments are therefore rejected. We additionally note that defendant's assertion that the trial court was factually mistaken with respect to whether defendant was suffering from a disability at the time of the divorce hearing is belied by the record. The trial court expressly recognized that defendant was currently receiving disability benefits and sought clarification from the parties concerning the language in the offset provision that suggested otherwise. In sum, defendant's arguments are unavailing. . . . . [*Foster*, unpub op at 1 to 5 (alterations in original opinion).]

Now, we turn our attention to our Supreme Court's remand order and the decision in *Howell* issued by the United States Supreme Court. In *Howell*, 137 S Ct at 1402, the Court stated and ruled:

A federal statute provides that a State may treat as community property, and divide at divorce, a military veteran's retirement pay. See 10 USC 1408(c)(1). The statute, however, exempts from this grant of permission any amount that the Government deducts "as a result of a waiver" that the veteran must make "in order to receive" disability benefits. § 1408(a)(4)(B).[2] We have held that a State cannot treat as community property, and divide at divorce, this portion (the waived portion) of the veteran's retirement pay.

---

[2] The language in 10 USC 1408(a)(4)(B) is now found in 10 USC 1408(a)(4)(A)(ii). See *Howell*, 137 S Ct at 1403.

In this case a State treated as community property and awarded to a veteran's spouse upon divorce a portion of the veteran's total retirement pay. Long after the divorce, the veteran waived a share of the retirement pay in order to receive nontaxable disability benefits from the Federal Government instead. Can the State subsequently increase, pro rata, the amount the divorced spouse receives each month from the veteran's retirement pay in order to indemnify the divorced spouse for the loss caused by the veteran's waiver? The question is complicated, but the answer is not. Our cases and the statute make clear that the answer to the indemnification question is "no." [Citation omitted.]

The *Howell* Court also made clear that characterizing an order as merely requiring reimbursement or indemnification could not avoid the rule, as "[t]he difference is semantic and nothing more." *Howell*, 137 S Ct at 1406.

*Howell* involved general service-connected disability benefits, and the Supreme Court's opinion rested squarely on the language in former 10 USC 1408(a)(4)(B), which provided and still provides in 10 USC 1408(a)(4)(A)(ii), that "disposable retired pay" means a member's total monthly retired pay less amounts that "are deducted from the retired pay . . . as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38[.]" *Howell*, 137 S Ct at 1402-1404. CRSC (combat-related special disability pay), at issue in this appeal, is compensation under Title 10, not Title 5 or Title 38 as referenced when arriving at "disposable retired pay." In our earlier opinion, we relied on this Court's opinion in *Megee*, 290 Mich App 551, which distinguished CRSC from general service-connected disability pay found in title 38 on the basis that the panel was addressing a waiver of retirement pay in favor of *title 10* CRSC compensation. Given that CRSC is at issue in the instant case, that *Howell* did not concern or analyze a waiver of retirement pay in favor of CRSC disability pay, and that *Megee* is on point and remains binding precedent, MCR 7.215(J)(1), we again affirm the trial court's ruling.

Affirmed. We decline to award taxable costs under MCR 7.219.


/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Amy Ronayne Krause